**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| vs. | ) | 2:09cr105 |
| | ) | **Electronic Filing** |
| **RUBEN MITCHELL** | ) | |

**MEMORANDUM OPINION**

November 6, 2009

**I.   INTRODUCTION**

On March 24, 2009, a grand jury returned a one-count indictment against Defendant, Ruben Mitchell ("Mitchell" of "Defendant"), charging him with attempt to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 846.  Mitchell was arrested on April 6, 2009, and made his initial appearance before Magistrate Judge Lisa Pupo Lenihan on April 30, 2009.

During the initial appearance, the Government requested a DNA sample from Mitchell pursuant to 42 U.S.C. § 14135a (a)(1)(A) and its accompanying regulation 28 C.F.R. § 28.12. Mitchell, through counsel, objected to the pretrial collection of his DNA[1], and requested leave to file a brief in support of his position.  Magistrate Judge Lenihan then ordered that Mitchell file a motion and brief in support of his objections and stayed the collection of Mitchell's DNA pending resolution of the issue by this Court.  The Government and the Defendant have had an opportunity to brief the matter, and the issue is now before the Court.

**II.   DISCUSSION**

The DNA Analysis Backlog Elimination Act of 2000 (the "Act"), 42 U.S.C. 14135a,

---

[1]   DNA stands for deoxyribonucleic acid. DNA molecules carry the genetic information of human beings. DNA is unique to each individual, except in the case of identical twins. *United States v. Sczubelek*, 402 F.3d 175, 181 n. 2 (3d Cir. 2005).

required the collection of a DNA sample "from each individual in the custody of the Bureau of Prisons who is, or has been, convicted of a qualifying Federal offense" and from "an individual on probation, parole or supervised release . . ." 42 U.S.C. 14135a(a)(1) & (2)(2000). Congress expanded the reach of the Act in 2006 (the "2006 Act") allowing the Attorney General to "collect DNA samples from individuals who are arrested, facing charges, or convicted . . ." 42 U.S.C. § 14135a (a) (1) (A). Subsequent to collection, the DNA sample is to be provided to the Director of the Federal Bureau of Investigation (the "FBI") for analysis and inclusion in the Combined DNA Index System ("CODIS"). 42 U.S.C. § 14135a (b).

The expansion of the statutory DNA collection, however, did not go into effect until the regulations were finally promulgated by the Attorney General effective January 9, 2009. *See* 28 C.F.R. § 28.12. In relevant part, the regulation states:

> Any agency of the United States that arrests or detains individuals or supervises individuals facing charges shall collect DNA samples from individuals who are arrested, facing charges or convicted . . .

28 C.F.R. § 28.12(b). Citing the regulation, the Government appeared at Mitchell's initial appearance requesting permission from the Court to collect a sample of Mitchell's DNA.

Mitchell contends that the pretrial collection of his DNA violates the Fourth Amendment to the United States Constitution as the procedure constitutes a warrantless search that cannot be justified under any exception to the warrant requirement. Further, Mitchell argues that Congress exceeded its authority under the Commerce Clause when it enacted the statute which permits the collection of DNA from individuals who are arrested and/or facing charges. It is undisputed that either the drawing of blood, *see Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989), or the use of a buccal swab, *see Padgett v. Donald*, 401 F.3d 1273, 1277 (11th Cir. 2005), for purposes of DNA collection are searches subject to Fourth Amendment scrutiny. Further, the "ensuing chemical analysis of the sample to obtain physiological data" is also a search covered by the Fourth Amendment. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. at 616.

The Fourth Amendment to the United States Constitution protects "the right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. Const. Amend. IV.  Therefore, "[t]he fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search." *United States v. Sczubelek*, 402 F.3d 175, 182 (3d Cir. 2005) (quoting *United States v. Knights*, 534 U.S. 112, 118 (2001)).  If a search is reasonable, there is no violation of individual Fourth Amendment rights as the Fourth Amendment proscribes only those searches and seizures that are unreasonable. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989); *United States v. Sharpe*, 470 U.S. 675, 682 (1985).  What is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. at 619; *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). The Court must balance "on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other hand, the degree to which [the search] is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. at 119; *see also Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. at 619.

A search or seizure is generally found to be reasonable if accomplished pursuant to a judicial warrant issued upon probable cause. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. at 619; *Payton v. New York*, 445 U.S. 573, 586 (1980); *Mincey v. Arizona*, 437 U.S. 385, 390 (1978).  However, "neither a warrant nor probable cause, nor, indeed any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." *United States v. Sczubelek*, 402 F.3d at 182 (quoting *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989)).  The United States Supreme Court has recognized exceptions to the warrant requirement when: "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable", *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)(quoting *New Jersey v. T. L. O.*, 469 U.S. 325, 351 (1985)(Blackmun, J., concurring in judgment), or when legitimate  governmental interests outweigh the diminished expectation of privacy of those previously convicted of a crime.

*United States v. Sczubelek*, 402 F.3d at 184-186.

Prior to Congress' enactment of the 2006 Act, every federal circuit considering DNA indexing statutes has upheld the statutes as constitutional under the Fourth Amendment. *See United States v. Conley*, 453 F.3d 674 (6th Cir. 2006) (reviewing the 2000 DNA Act); *United States v. Kraklio*, 451 F.3d 922, 923 (8th Cir. 2006) (reviewing the 2000 DNA Act); *Nicholas v. Goord*, 430 F.3d 652, 671 (2d Cir. 2005) (reviewing comparable state DNA indexing statute); *United States v. Sczubelek*, *supra.* (reviewing the 2000 DNA Act); *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005) (reviewing comparable state DNA indexing statute), *cert. denied*, 126 S. Ct. 352, 163 L. Ed. 2d 61 (2005); *United States v. Kincade*, 379 F.3d 813, 830-32 (9th Cir. 2004)(*en banc*, five judges endorsing the reasonableness standard; one, the special needs exception; and five dissenting)(reviewing the 2000 DNA Act), *cert. denied*, 544 U.S. 924 (2005); *Green v. Berge*, 354 F.3d 675, 677-79 (7th Cir. 2004) (reviewing comparable state DNA indexing statute); *Groceman v. U.S. Dep't of Justice*, 354 F.3d 411, 413-14 (5th Cir. 2004) (per curiam) (reviewing the 2000 DNA Act); *United States v. Kimler*, 335 F.3d 1132, 1146 (10th Cir. 2003) (reviewing the 2000 DNA Act); *Jones v. Murray*, 962 F.2d 302, 306-08 (4th Cir. 1992) (reviewing comparable state DNA indexing statute). In each of these cases, the party challenging the statute had been convicted of a crime specified in the relevant statute.

In finding the DNA statutes constitutional under the Fourth Amendment, the majority of circuits relied upon the "totality of the circumstances" test, balancing the legitimate governmental interests against the diminished expectation of privacy of those previously convicted of a crime, and determining whether the search and seizure was reasonable. *See United States v. Kraklio*, 451 F.3d at 924; *United States v. Sczubelek*, 402 F.3d at 184-186; *Padgett v. Donald*, 401 F.3d at 1280; *United States v. Kincade*, 379 F.3d at 832; *Groceman v. U.S. Dep't of Justice*, 354 F.3d at 413; *Jones v. Murray*, 962 F.2d at 307. The Second, Seventh and Tenth Circuits, however, applied the "special needs" test, examining whether special needs existed which would sufficiently justify a search and seizure absent a warrant and probable cause. *See Nicholas v. Goord*, 430 F.3d at 671; *Green v. Berge*, 354 F.3d at 679; *United States*

*v. Kimler*, 335 F.3d at 1146. Finally, the Sixth Circuit declined to choose a mode of analysis, holding that the DNA Act was constitutional under either a totality of the circumstances or a special needs analysis. *See United States v. Conley*, 453 F.3d at 679-681.

Absent a warrant and probable cause, then, the Court must analyze Mitchell's Fourth Amendment challenge to the 2006 Act under either the "special needs" exception or the "totality of the circumstances" balancing test. The Government in this instance argues that the Court must take into account the totality of the circumstances in assessing the reasonableness of requiring a DNA sample from Mitchell. *See United States v. Knights*, 534 U.S. 112 (2001); *United States v. Sczubelek*, *supra*.; *United States v. Pool*, 2009 U.S. Dist. LEXIS 64149 (E.D. Cal. May 27, 2009). Mitchell, however, argues that the proper analysis is that based upon special needs as set forth in several Supreme Court cases. *See e.g. New Jersey v. T. L. O.*, 469 U.S. 325, 351 (1985); *Griffin v. Wisconsin*, 483 U.S. 868 (1987); *Indianapolis v. Edmond*, 531 U.S. 32 (2000); *Ferguson v. City of Charleston*, 532 U.S. 67 (2001); *Illinois v. Lidster*, 540 U.S. 419 (2004).

In determining which test to apply, the courts generally cite to and rely upon the Supreme Court decisions in *United States v. Knights* and *Griffin v. Wisconsin*. In both cases, the Supreme Court addressed the Fourth Amendment as it applied to persons on probation, however, neither case involved the collection of DNA. *See United States v. Knights*, 534 U.S. at 119; *Griffin v. Wisconsin*, 483 U.S. at 873. In *Griffin*, the Supreme Court upheld a warrantless search of the probationer's home by applying the "special needs" exception. *Griffin v. Wisconsin*, 483 U.S. at 873-874. The Court justified the departure from the traditional warrant and probable-cause requirements based upon a "special need" to effectively operate a probation system. *Id.* The Court also found, however, that reasonable grounds existed to support the search, therefore, the search of the probationer's home was not a completely suspicionless search. *Id.* at 875-76.

The Supreme Court, in *Knights*, also upheld a warrantless search of a probationer's home, but did so by applying the general Fourth Amendment totality of the circumstances

balancing test for reasonableness. *See United States v. Knights*, 534 U.S. at 121-122. The Court found that the search satisfied the balancing test, but importantly, also found that the search was supported by reasonable suspicion and authorized by a specific condition of probation. *Id.* at 122. Neither case, then, directly addresses which test to apply to the completely suspicionless search. In fact, the Supreme Court in *Knights* specifically noted that its analysis neither reached nor addressed the issue of a search conducted without any individualized suspicion. *Id.* at 120 n.6.

Mitchell is not on probation, supervised release or parole. He has been arrested and is incarcerated as a pretrial detainee. The Court, therefore, must apply the teachings of *Griffin* and *Knights*, and look to the cases that follow for instruction as to which test is applicable to Mitchell's circumstances. For the reasons set forth below, the Court finds that the special needs exception is not the proper analysis in determining whether the 2006 Act violates the Fourth Amendment. Applying the totality of the circumstances test, however, the Court finds that the warrantless, suspicionless pretrial collection of DNA is a violation of the Fourth Amendment's protection of an individual's right to be free from unreasonable searches and seizures.

A.   Special Needs Analysis

When law enforcement officials undertake a search to discover evidence of criminal wrongdoing, the Fourth Amendment's requirement of reasonableness generally mandates that the officers have both probable cause and a search warrant. A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing. *Chandler v. Miller*, 520 U.S. 305, 308 (1997). The Supreme Court, however, has recognized that a warrantless, suspicionless search may be justified "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. at 873; *Chandler v. Miller*, 520 U.S. at 313 (stating that "to be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing [but that] particularized exceptions to the main rule are sometimes warranted based on special needs, beyond the normal need for law enforcement"). *See also e.g. Vernonia*

*School Dist. 47J v. Acton*, 515 U.S. 646 (1995) (random drug testing of student-athletes); *Treasury Employees v. Von Raab*, 489 U.S. 656 (1989) (drug tests for United States Customs Service employees seeking transfer or promotion to certain positions); *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602 (1989) (drug and alcohol tests for railway employees involved in train accidents or found to be in violation of particular safety regulations).

More recently, the Supreme Court clarified the relationship between "special needs" and law enforcement objectives. In *City of Indianapolis v. Edmond*, the Court struck down an automobile checkpoint program "whose primary purpose was to detect evidence of ordinary criminal wrongdoing," explaining that this type of "general interest in crime control" could not qualify as a special need. *Id.* at 41-42 (citation and internal quotation marks omitted). Subsequently in *Ferguson v. City of Charleston*, the Court held unconstitutional a hospital program that tested patients' urine for cocaine use, finding that because the "immediate objective of the searches was to generate evidence for law enforcement purposes" the search program did not qualify as a special need. *Id.* at 83-84. Specifically, the Court found that, in special needs cases, "traditional warrant and probable cause requirements are waived . . . on the presumption that the evidence obtained in the search is not intended to be used for law enforcement purposes." *Ferguson v. City of Charleston*, 532 U.S. at 88 (Kennedy, J., concurring).

The Government argues that *Edmond* and *Ferguson* decisions are not applicable to the instant case. Quoting the California District Court in *Pool*, the Government contends:

> [*Edmond*] involved the search and seizure of motorists on a particular road, [while *Ferguson* involved] patients being admitted to a hospital. Importantly, there had been no judicial involvement in finding that each specific person to be tested had been involved in criminal wrongdoing. Rather, the government was simply fishing for substantive evidence [to take to] a judge or otherwise commence criminal proceedings. As such, neither the motorists nor the patients could be compelled to give substantive evidence absent special needs beyond the mere general need to enforce the criminal laws. The instant case is worlds apart from that in the above two cited cases -- [here] defendant is subject to DNA testing after a judicial finding or grand jury determination of probable cause.

*United States v. Pool*, 2009 U.S. Dist. LEXIS 64149 at 11* - 12*.  Though this Court disagrees with the ultimate holding in *Pool*[2], we agree with the premise that Mitchell's status is certainly not analogous to those subject to the searches in *Edmonds* or *Ferguson*.

This Court is unable to justify any DNA testing regime based upon the special needs exception.  As recognized by the United States Court of Appeals for the Ninth Circuit, an obvious problem arises in attempting to apply the special needs test to the DNA Act:

> The unequivocal purpose of the searches performed pursuant to the DNA Act is to generate the sort of ordinary investigatory evidence used by law enforcement officials for everyday law enforcement purposes. . . . [I]n passing the [2000] DNA Act, Congress's primary concern was the swift and accurate solution and prosecution of crimes as a general matter. The legislative history is littered with approving references to DNA evidence's ability to solve past and future crimes and thereby assist prosecutions. *See, e.g.*, DNA Act House Report, at 8-11, 23-27, 32-36 (2000). For example, the Department of Justice argued to Congress that "one of the underlying concepts behind CODIS is to create a database of convicted offender profiles and use it to solve crimes for which there are no suspects." *Id.* at 27. Members of Congress made similar arguments. See 146 CONG. REC. S11645-02, at S11647 (daily ed. Dec. 6, 2000) (arguing that the purpose of adding DNA profiles into CODIS is to "solve crimes and prevent further crimes") (statement of Sen. Leahy); 146 CONG. REC. H8572-02, at H8575-6 (daily ed. Oct. 2, 2000) (statement of Rep. Canady) ("The purpose of [CODIS] is to match DNA samples from crime scenes where there are no suspects with the DNA of convicted offenders. Clearly, the more samples we have in the system, the greater the likelihood we will come up with matches and solve cases.")

---

[2]   The court in *Pool* held that "after a judicial or grand jury determination of probable cause has been made for felony criminal charges against a defendant, no Fourth Amendment or other Constitutional violation is caused by a universal requirement that a charged defendant undergo a 'swab test,' or blood test when necessary, for the purposes of DNA analysis to be used solely for criminal law enforcement, identification purposes." *United States v. Pool*, 2009 U.S. Dist. LEXIS 64149 at 35*-36*.

*United States v. Kincade*, 379 F.3d 813, 855-856 (9th Cir. 2004)(Reinhardt, J., dissenting)[3]. The Second, Seventh and Tenth Circuits have also been criticized for upholding DNA collection statutes under the special needs exception subsequent to the Supreme Court's holdings in *Edmond* and *Ferguson*. "These courts' reliance on the special needs exception to justify forcible DNA testing schemes sets a dangerous precedent . . . accepting the reasoning of these three cases would so broaden the special needs exception that Fourth Amendment protection 'would approach the evaporation point.'" Julie Rikelman, *Justifying Forcible DNA Testing Schemes Under the Special Needs Exception to the Fourth Amendment: A Dangerous Precedent*, 59 Baylor L. Rev. 41, 57 (2007)(quoting *Chimel v. California*, 395 U.S. 752, 765 (1969)).

Clearly, the special needs exception to the warrant and probable cause requirements of the Fourth Amendment allow suspicionless searches only when the government's purpose is something other than law enforcement and/or criminal investigation. A DNA sample taken pursuant to the 2006 Act is provided to the FBI for analysis and inclusion in CODIS. 42 U.S.C. § 14135a (b). Inclusion in CODIS "allows State and local forensics laboratories to exchange and compare DNA profiles electronically in an attempt to link evidence from crime scenes for which there are no suspects to DNA samples of convicted offenders on file in the system." *United States v. Sczubelek*, 402 F.3d at 181 (quoting H.R. REP. 106-900(I), at 8 (2000)). Under the Crime Control Act, disclosure of the test results is limited to "criminal justice agencies for law enforcement identification purposes," for use "in judicial proceedings,"

---

[3]   Judge Reinhardt's dissent criticized the plurality's approval of "the latest installment in the federal government's effort to construct a comprehensive national database into which basic information concerning American citizens will be entered and stored for the rest of their lives--although no majority exists with respect to the legal justification for this conclusion." *United States v. Kincade*, 379 F.3d at 843. Further, Judge Reinhardt described the rationale of the plurality stating: "five judges . . . [adopted] a sweeping totality of the circumstances test, . . . blatantly eviscerating the constitutional requirement of individualized suspicion for law enforcement searches[, while a sixth] judge . . . [concurred based upon] the 'special needs' test, [which] on its face [is] more limited than the plurality's [rationale], but in the end its application here would also have drastic adverse consequences for our Fourth Amendment protections." *United States v. Kincade*, 379 F.3d at 843 n.1.

and "for criminal defense purposes, to a defendant." *See* 42 U.S.C. § 14132(b)(3). The legislative intent fails to suggest that the enactment of the DNA collection statutes was based upon any special need outside of law enforcement purposes.

Though the Government in this instance argues for a totality of the circumstances analysis, it suggests, in the alternative, that the 2006 Act also satisfies the special need exception. The Government contends that the collection of DNA and the profiles generated therefrom serve a number of special needs including exculpating individuals imprisoned for crimes they did not commit, and in eliminating individuals as suspects when crimes are committed. The Court agrees that these are certainly explicit purposes of the 2006 DNA Act, however, they clearly are not "special needs, beyond the normal need for law enforcement". In finding the forcible extraction of a DNA sample from a pretrial detainee pursuant to a state statute to be a violation of the Fourth Amendment, the Court of Appeals for the Ninth Circuit rejected the government's special needs argument stating:

> The only government interest asserted . . . in taking [the detainee's] DNA was to help solve "cold cases." Solving crimes is clearly a normal law enforcement function. Because the "special needs" exception applies only to non-law enforcement purposes, and the State's interest here is the use of data for purely law enforcement purposes, the "special needs" exception is inapplicable.

*Friedman v. Boucher*, 580 F.3d 847, 853 (9th Cir. 2009)[4].

A DNA profile generates investigatory evidence that is primarily used by law enforcement officials for general law enforcement purposes. To allow such suspicionless searches, which are conducted in almost all instances with law enforcement involvement, to occur absent traditional warrant and probable cause requirements will intolerably diminish our protection from unreasonable intrusion afforded by the Search and Seizure Clause of the Fourth Amendment. The Court, therefore, finds that the "special needs" exception to the warrant and

---

[4] The Ninth Circuit ultimately found the forcible extraction of DNA from a pretrial detainee to be unreasonable under general Fourth Amendment principles, holding "[t]he warrantless, suspicionless, forcible extraction of a DNA sample from a private citizen violates the Fourth Amendment." *Id.* at 858.

probable cause requirements of the Fourth Amendment is inapplicable here.

      B.     <u>Totality of the Circumstances Analysis</u>

As set forth above, one of the exceptions to the warrant requirement recognized by the Supreme Court allows for a determination of the reasonableness of a search using the totality of the circumstances "by assessing, on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which [the search] is needed for the promotion of legitimate governmental interests." *See Samson v. California*, 547 U.S. 843, 848 (2006). This Court then must determine whether legitimate governmental interests outweigh the alleged diminished expectation of privacy of an individual who has been arrested and incarcerated as a pretrial detainee.

           1.     <u>Expectation of Privacy - Pretrial Detainee</u>

In determining the invasion of Mitchell's privacy, the Court must consider the nature of the privacy interest invaded and the degree to which the intrusion affects this interest. *See Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 653-654 (1995). The inquiry into the nature and degree of intrusion begins with addressing and taking into account Mtichell's status as a pretrial detainee. The Government, in fact, argues that the Court should not only take into account Mitchell's "dual" status as an arrestee and pretrial detainee, but should also take into account his criminal history[5]. The Government, however, offers no authority for consideration of an individual's criminal history in determining an appropriate expectation of privacy under the Fourth Amendment. Further, the Government stresses that the grand jury and a judicial officer have found probable cause to believe Mitchell has committed a crime, and therefore, he cannot be treated as an "ordinary" citizen in determining his Fourth Amendment rights. In support, the Government directs this Court to the California District Court's decision in *United States v. Pool*, 2009 U.S. Dist. LEXIS 64149 (E. D. Calif. May 27, 2009), in which the court

---

     [5]    In 1990, Mitchell was convicted of providing false information to law enforcement and was placed on probation for eighteen (18) months. Mitchell was then convicted of a felony drug offense in 1993, and was placed on probation for three (3) years.

-11-

stated: "[t]he judicial or grand jury finding of probable cause within a criminal proceeding is a watershed event which should be viewed differently from mere pre-judicial involvement gathering of evidence." *Id.* at *12-13[6]. Neither the Government nor the *Pool* court, however, addresses the moral polestar of our criminal justice system – the presumption of innocence.

This Court is loath to elevate a finding of probable cause to the level of a proper determination of guilt beyond a reasonable doubt, and therefore, strongly disagrees with the court's analysis in *Pool*. Further, the search in this instance is one that reveals the most intimate details of an individual's genetic condition, implicating compelling and fundamental "interests in human dignity and privacy." *See Schmerber v. California*, 384 U.S. 757, 770 (U.S. 1966). Thus, in addition to the presumption of innocence, the Court must consider that the protection of

> such inherently private information is even more compelling when considering that Fourth Amendment protections once lost, are likely lost forever. Under the current analytical framework for the Fourth Amendment, such protections attach only as long as society objectively recognizes a personal, subjective expectation of privacy as reasonable. . . As a result, an individual will lose Fourth Amendment protections as information becomes so pervasively available and public that objectively one could not expect to exclude others from performing such actions or accessing such data. . . . The protection of privacy for the whole society is dependent upon the vigorous defense of the privacy interests of the individual. To allow the reverse to occur and to support an encroachment on the privacy interests of a segment of society is to create a class of persons who must be resigned to such intrusions, diluting society's cohesive and objective recognition of one's right to exclude others from obtaining that information. . . . Society cannot reclaim an objective expectation of privacy once it is surrendered.

*United States v. Stewart*, 468 F. Supp. 2d 261, 279 (D. Mass. 2007)(citations omitted). Based upon the significant need to protect the complex and comprehensive information contained in a

---

[6] It is also important to note that the District Judge in *Pool* ignored the Ninth Circuit's finding in *Friedman* that pretrial detainees "retain greater privacy interests" than individuals incarcerated pursuant to a valid conviction. *Friedman v. Boucher*, 580 F. 3d at 856-857. The court rejected the government's argument that "pretrial detainees have limited privacy rights that must yield to the desires of law enforcement to collect DNA samples for use in law enforcement databases." *Id.*

DNA specimen, this Court will not diminish Mitchell's expectation of privacy in the Fourth Amendment's balancing equation based merely upon his status as an arrestee.

The same cannot be said, however, regarding Mitchell's status as a pretrial detainee. The Supreme Court has recognized that the "institutional needs and objectives" of prison facilities necessarily require, as a practical matter, the curtailment of certain rights. *Wolff v. McDonnell*, 418 U.S. 539, 555-556 (1974); *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) ("A detention facility is a unique place fraught with serious security dangers."). The paramount concern in this respect is internal security. *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). Decisions by prison administrators regarding matters of security, discipline, and administration, therefore, are accorded great deference. *Bell v. Wolfish*, 441 U.S. at 547. If a prison regulation or practice impinges on an inmate's constitutional rights, such regulation or practice is valid if it is reasonably related to legitimate penological interests such as institutional security. *Lewis v. Casey*, 518 U.S. 343, 361-362 (1996); *Washington v. Harper*, 494 U.S. 210, 223-224 (1990) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Though pretrial detainees have a diminished expectation of privacy as it relates to legitimate penological interests, the Fourth Amendment does not stop at the jailhouse door. The Supreme Court has never ruled that law enforcement officers may conduct suspicionless searches on pretrial detainees for reasons other than prison security. *See Friedman v. Boucher*, 580 F. 3d at 857.  In *Bell v. Wolfish*, *supra.*, the Supreme Court reiterated "[t]here is no iron curtain drawn between the Constitution and the prisons of this country," *id.* at 544 (quoting *Wolff v. McDonnell*, 418 U.S. at 555-556), but allowed the search for contraband at issue in the case based upon the "institution's interest in maintaining jail security." *Id.* at 540. The *Hudson* Court revisited the issue of inmates' Fourth Amendment rights in the context of a cell search challenged by a convicted prisoner and held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. at 526. Despite,

the Court's broad language recognizing diminished Fourth Amendment rights, it noted that prison inmates do retain significant substantive rights, and that the continuing guarantee of these rights is "testimony to a belief that the way a society treats those who have transgressed against it is evidence of the essential character of that society." *Id.* at 523-524.

The majority of circuit courts that have limited *Hudson* to cell searches and have held, either explicitly or implicitly, that *Hudson* did not disturb *Bell's* Fourth Amendment approach to analyzing the constitutionality of searches conducted in custodial settings. *See Allison v. GEO Group, Inc.*, 611 F. Supp. 2d 433, 446-445 (E.D. Pa. 2009)(collecting circuit court cases). Mitchell, then, must certainly submit his person and his cell to search for contraband, but this Court can find no nexus between the required submission of a DNA sample and institutional security. Mitchell, therefore, maintains the highest expectation of privacy, even though incarcerated, in his genetic code.

The Government also proclaims that, because he has been charged with a felony offense, and therefore, subject to identification and booking procedures, Mitchell has "an extremely diminished, if not nonexistent, right to privacy in his identity." *See* Government Brief p. 16. "An arrestee has a diminished expectation of privacy in his own identity. Probable cause has long been the standard which allowed an arrestee to be photographed, fingerprinted and otherwise be compelled to give information which can later be used for identification purposes." *United States v. Pool*, 2009 U.S. Dist. LEXIS 64149 at *15 (citing *Napolitano v. United States*, 340 F.2d 313, 314 (1st Cir. 1963)). The *Pool* court specifically found that "DNA sampling is analogous to taking fingerprints as part of the routine booking process upon arrest." *United States v. Pool*, 2009 U.S. Dist. LEXIS 64149 at *19.

The Court agrees that Mitchell has a diminished expectation of privacy in his identity, but to compare the fingerprinting process and the resulting identification information obtained therefrom with DNA profiling is pure folly. Such oversimplification ignores the complex, comprehensive, inherently private information contained in a DNA sample. DNA samples may reveal private information regarding familial lineage and predisposition to over four

thousand types of genetic conditions and diseases; they may also identify genetic markers for traits including aggression, sexual orientation, substance addiction, and criminal tendencies. Leigh M. Harlan, *When Privacy Fails: Invoking a Property Paradigm to Mandate the Destruction of DNA Samples*, 54 Duke L.J. 179, 189 (2004). With the continued advances of technology, the reach of the information obtained from DNA will be ever evolving and increasingly comprehensive.

Fingerprints, however, only identify the person who left them. Therefore, fingerprints already provide an unequivocal, and in some respects, a better record of personal identity than forensic DNA typing. Monozygotic twins, for example, can be distinguished by their fingerprints, but not by their DNA. *See* C.H. Lin et al., *Fingerprint Comparison. I: Similarity of Fingerprints*, 27 J. Forensic Sci. 290 (1982). The extraction of DNA, then, is much more than a mere progression to taking fingerprints and photographs, it represents a quantum leap that is entirely unnecessary for identification purposes. The only reasonable use of DNA is investigative, it is not an identification science it is an information science. The identification issue in this instance is a red herring, as there is no compelling reason to require a DNA sample in order to "identify" an arrestee[7].

The Government also argues that the degree of intrusion affecting Mitchell's privacy interest is minimal. The Third Circuit, in *Sczubelek*, specifically found that "the intrusion of a blood test is minimal." *United States v. Sczubelek*, 402 F.3d at 184 (citing *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. at 625)[8]. The taking of a buccal swab, then, certainly can not be any more intrusive. The Third Circuit, however, also stated that "this slight intrusion

---

[7] Moreover, the court in *Sczubelek* expressly stated: "[a]fter his *conviction* of a felony, his identity became a matter of compelling interest to the government, and these marks of identification, the fingerprints and the photographs, became a permanent record. Sczubelek can no longer assert a privacy interest in these means of identification." *United States v. Sczubelek*, 402 F.3d at 184 (emphasis added).

[8] In *Sczubelek*, the court found that the collection of DNA samples from individuals on supervised release, not arrestees or pretrial detainees, pursuant to the 2000 DNA Act, was not an unreasonable search in violation of the Fourth Amendment.

-15-

into an ordinary citizen's privacy is unconstitutional." *Id.* Though Mitchell may not be considered an "ordinary citizen" based upon his restricted liberty as a pretrial detainee, this Court has found that he maintains a high expectation of privacy in the comprehensive, inherently private information contained in his DNA sample. Therefore, even though the taking of a sample may not be unreasonably intrusive, the search of the sample is quite intrusive, severely affecting Mitchell's expectation of privacy in his most intimate matters.

### 2. Legitimate Government Interests

The Court now must determine whether there are legitimate governmental interests that outweigh Mitchell's expectation of privacy in his DNA. The Government's interest in Mitchell's identification is a legitimate interest, but is also one that can be satisfied with a fingerprint and photograph. There is no compelling need to search a DNA sample solely for identification purposes.

In upholding the sampling of DNA from an individual on supervised release, the Third Circuit described the governmental interests to be weighed:

> A DNA database promotes increased accuracy in the investigation and prosecution of criminal cases. It will aid in solving crimes when they occur in the future. Equally important, the DNA samples will help to exculpate individuals who are serving sentences of imprisonment for crimes they did not commit and will help to eliminate individuals from suspect lists when crimes occur… The interest in accurate criminal investigations and prosecution is a compelling interest that the DNA Act can reasonably said to advance.

*United States v. Sczubelek*, 402 F.3d at 185. The law at issue in *Sczubelek*, however, required DNA samples to be collected from "individuals in custody and those on probation, parole, or supervised release after being convicted of qualifying Federal offenses." *Id.* at 181. The rationale for sustaining these types of searches was set forth by the Supreme Court in upholding a search on the basis of the plaintiff's status as a parolee, citing the requirement of "intense supervision" of such persons and the problems of "re-integration" of parolees into society. *Samson v. California*, 547 U.S. 843, 854 (2006). The court in *Sczubelek* also mentioned the additional interests in "rehabilitation" and "protecting society." *United States v. Sczubelek*, 402

F.3d at 186.

Here, however, Mitchell had completed any term of probation from his previous state sentences, and was no longer under any type of supervision. The purpose of collecting his DNA is solely for criminal investigative purposes. The Court agrees that the Government has a compelling interest in accurate criminal investigations and prosecutions, but only in proper sequence.  The collection and testing of DNA from individuals convicted of qualifying offenses has been deemed constitutional under the Fourth Amendment by several courts including the Court of Appeals for the Third Circuit.  The Court can find no compelling reason to unduly burden a legitimate expectation of privacy and extend these warrantless, suspicionless searches to those members of society who have not been convicted, are presumed innocent, but have been arrested and are awaiting proper trial.

Further, there is no exigency that supports the collection of DNA from an arrestee or pretrial detainee. An individual is obviously unable to conceal or change the comprehensive information contained in his or her DNA, therefore there is no need for an expeditious search made in order to prevent the concealment of past criminality.  If a law enforcement official has probable cause to believe that an arrestee has involvement in either past or ongoing criminal activity, then it is not unreasonable to require such official to adhere to the requirements of the Fourth Amendment and secure a proper warrant for the collection of the suspect's DNA.

The Government also urges this Court to consider the structure of, and the protections contained within the 2006 DNA Act in its assessment of the reasonableness of the search. Such considerations include: (1) the Act is limited to an identifiable and discrete class of offenders; (2) the sample can be used for specifically delineated and limited purposes, and any violation of the Act will result in criminal penalties; and (3) if the charges are dropped or the individual is acquitted, his or her DNA sample will be expunged from CODIS[9].  Whether the structure and built-in protections will alleviate the potential for widespread abuse of the private

---

[9]   Is it not decidedly more logical to wait until the individual is convicted before collecting the sample and then permanently entering the resulting profile in CODIS?

information derived from DNA is of no moment to the determination of the reasonableness of a warrantless search. No amount of statutory protection of the sample or the information contained therein will undo the taint of an unconstitutional search to obtain such information.

In assessing the totality of the circumstances and weighing the legitimate governmental interests against Mitchell's expectation of privacy in the genetic information contained in his DNA sample, the Court finds that a universal requirement that a charged defendant submit a DNA sample for analysis and inclusion in a law enforcement databank for criminal law enforcement and /or identification purposes is unreasonable under, and therefore in violation of, the Fourth Amendment to the United States Constitution

    C.    Commerce Clause

Based upon the Court's ruling above, there is no need for a Commerce Clause analysis. Moreover, our Court of Appeals for the Third Circuit has already ruled that the 2000 DNA Act was valid under the Commerce Clause stating:

> the Supreme Court has already held that personal information contained in a Department of Motor Vehicles' record is a "thing" in interstate commerce, and that the Commerce Clause authorizes Congress to regulate "the sale or release of such information." *Reno v. Condon*, 528 U.S. 141, 120 S. Ct. 666, 671, 145 L. Ed. 2d 587 (2000) (quoting *Lopez*, 514 U.S. 549, 115 S. Ct. 1624, 1630, 131 L. Ed. 2d 626 (1995) (emphasis added). We agree with the reasoning of the Court of Appeals of the Ninth Circuit that the same holds true for information obtained in the DNA Act. *United States v. Reynard*, 473 F.3d 1008, 1023 (9th Cir. 2007). Therefore we conclude that the personal, identifying information contained in a DNA sample constitutes a "thing" in interstate commerce.

*United States v. Hardy*, 283 Fed. Appx. 84, 86 (3d Cir. 2008). The Courts sees no reason to believe the Third Circuit would deviate from its analysis in determining the validity of the 2006 DNA Act under the Commerce Clause.

### III.    CONCLUSION

Based upon the foregoing, this Court finds that 42 U.S.C. § 14135a, and its accompanying regulations, requiring a charged defendant to submit a DNA sample for

analysis and inclusion in CODIS without independent suspicion or a warrant unreasonably intrudes on such defendant's expectation of privacy and is invalid under the Fourth Amendment to the United States Constitution.  An appropriate order follows.

        Cercone, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| vs. | ) | 2:09cr105 |
| | ) | **Electronic Filing** |
| **RUBEN MITCHELL** | ) | |

### ORDER OF COURT

And Now this 6th day of November, 2009, upon consideration of the Motion in Opposition to Pretrial DNA Collection (**Document No. 31**) filed on behalf of Defendant, Ruben Mitchell, the Government's response thereto, and the briefs filed in support thereof, in accordance with the Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that Defendant's motion in opposition is **GRANTED**. The requirements of 42 U.S.C. § 14135a, and its accompanying regulations, that a charged defendant to submit a DNA sample for analysis and inclusion in a law enforcement data base is unconstitutional under the Fourth Amendment to the United States Constitution.

IT IS FURTHER ORDERED that the Government shall not collect a DNA sample from Mr. Mitchell until such time he has been convicted of the offense set forth in the indictment.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:   Honorable Lisa Pupo Lenihan
      United States Magistrate Judge

      Michael Leo Ivory, AUSA

      Elisa A. Long, AFPD